# EXHIBIT H

```
                                                    FILED
                                                   SEP 5 1997
     IN THE UNITED STATES DISTRICT COURT
     FOR THE DISTRICT OF SOUTH CAROLINA         LARRY W. PROPES, CLERK
            CHARLESTON DIVISION                    CHARLESTON, SC
```

| | | |
|---|---|---|
| TERRANCE L. JUST, | ) | C/A No. 2:96-1251-18 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | O R D E R |
| | ) | |
| THE CITADEL, THE MILITARY | ) | |
| COLLEGE THE BOARD OF | ) | |
| TRUSTEES AND LGEN CLAUDIUS | ) | |
| E. WATTS, III, in his | ) | |
| capacity as President, | ) | |
| | ) | |
| Defendants. | ) | |

This civil rights action is before the court for Findings of Fact and Conclusions of Law pursuant to Fed.R.Civ.P.52. All parties waived a jury trial, and the Court held a bench trial on July 15, 1997. The court concludes that Defendants did not violate Plaintiff's constitutional rights, and it enters judgment accordingly.

## I. FINDINGS OF FACT

1. Plaintiff, Terrance L. Just, enrolled in the Citadel as a freshman cadet in the fall of 1992. As a freshman, Plaintiff received a copy of the Citadel Catalog and the Citadel Honor Manual.

2. The Citadel Catalog contains a detailed description

of the Citadel Honor System. The Citadel Honor Manual also sets forth a complete description of the Honor System as well as the Honor Code and the Honor Code procedures, including rights of an accused. The Honor Manual defines the honor violation of Lying as making a false official statement. An official statement is defined as follows:

> An official statement is a statement, written or oral, made to a commissioned officer of the staff or the faculty of the college, a member of the guard on duty, or any cadet required, in turn, to use the statement as a basis for an official report in any form.

The Honor Manual also gives examples of this offense. Some of these examples include various misrepresentations that a cadet might make to avoid punishment for being late returning to campus.



3.   Plaintiff received training and instruction on the Citadel Honor System during his freshman year. Plaintiff testified that he understood the provisions of the Honor Code and that he understood the Honor System is central to the philosophy of the Citadel. Plaintiff knew that he would be required to comply with the Honor Code in every detail.

4.   On Sunday night, December 10, 1995, Plaintiff was returning in his automobile to The Citadel campus when the

2

cadet officer on duty at the front gate stopped him stating Plaintiff was late. The cadet officer, Cadet Jason Cook, then asked Plaintiff for certain identifying information. A confrontation then arose between Cadet Cook and Plaintiff regarding whether Plaintiff was late.

5.  Cadet Cook testified, both before the Honor Court and before this court, that he asked Plaintiff for his name and "social" meaning "Social Security Number" - to which Plaintiff responded with the name of another cadet and a fictitious number. Cadet Cook testified that Plaintiff also gave a false Company identification. Cadet Cook recorded this information in his log, a copy of which was introduced at trial as an exhibit. Cadet Cook's testimony was corroborated by Philip Cahoon, a campus security officer. He testified, both before the Honor Court and at trial, that he overheard the exchange between Cadet Cook and Plaintiff. Plaintiff testified that he did not give a false name, but rather refused to give his name. He admitted that he made up the number that he gave Cadet Cook, but contends that Cadet Cook asked only for a number, not specifically his Social Security Number. In an affidavit submitted to this court in support of his Motion for Preliminary Injunction, Plaintiff stated that

3

he was unable to remember his Social Security Number when Cadet Cook asked him for it.

6. Following the incident at the front gate, Cadet Cook accused Plaintiff of violating The Citadel Honor Code by lying as to his identity. Cadet Cook officially charged Plaintiff with the honor violation on the evening of December 10, 1995, by executing an honor violation accusation sheet.

7. Plaintiff's company Honor Representative notified Plaintiff of the honor violation charge against him on December 11, 1995.

8. After Plaintiff was notified of the charge, a pre-trial investigation by a three-cadet investigation team was conducted. This investigation team found that there was sufficient evidence to warrant bringing the Honor Court case to trial.

9. Cadet defense counsel was appointed to represent Plaintiff on the honor violation charge against him. Plaintiff had three cadets serve as his defense counsel.

10. Plaintiff's defense counsel advised Plaintiff that they expected the Court to proceed with Plaintiff's Honor Court trial in December. Plaintiff's counsel further advised him that if this occurred, they would ask for a delay of the

4

trial in order to allow them time to prepare a proper defense. Defense counsel informed Plaintiff that they could not prepare a proper defense during exams and Christmas furlough. Plaintiff testified that he agreed defense counsel would be handicapped if they had been forced to try the case during exams or over Christmas break. After discussing these issues with defense counsel, Plaintiff agreed to the strategy of requesting the delay of the trial until after the Christmas furlough.

11. Sometime prior to December 14 or 15, 1995, Plaintiff's cadet defense counsel contacted The Citadel Honor Committee chairman, Cadet Caldwell Worley, and requested a delay of Plaintiff's Honor Court trial. Thereafter, Cadet Worley submitted a written report to the President of The Citadel, General Claudius Watts, notifying him that the trial would be delayed at the request of defense counsel. Cadet Worley's report was submitted to the President within 15 days of the honor violation charge.

12. Upon return from Christmas break, Cadet Worley scheduled Plaintiff's Honor Court trial for January 29, 1996. Thereafter, Plaintiff's defense counsel requested a further delay of the trial date. Cadet Worley granted the request and

5

rescheduled the trial for February 6, 1996. Defense counsel requested one additional delay which Cadet Worley granted. Trial was set for February 7, 1996.

13. Plaintiff and his defense counsel were provided with the names of witnesses for the prosecution prior to trial.

14. On the evening of February 6, 1996, Cadet Worley provided Plaintiff's defense team with the names of the cadets who would serve on Plaintiff's Honor Court. Plaintiff and his defense counsel had until 6:00 p.m. the next day to review those names for purposes of challenging any member of the Honor Court for cause.

15. Plaintiff's Honor Court trial was held on the evening of February 7, 1996. At the commencement of the trial, Cadet Worley offered Plaintiff and his defense counsel the opportunity to challenge any member of the Honor Court for cause. Neither Plaintiff nor his defense counsel challenged any member of the Honor Court for cause.

16. Plaintiff was represented throughout the trial by his cadet defense counsel team.

17. The cadet prosecution counsel presented Plaintiff's accuser, Cadet Cook, as a witness at the Honor Court trial.

6

The prosecution also presented Cadet Peter Glass[1] and Officer Philip Cahoon as witnesses. The testimony of Cadet Glass and Officer Cahoon corroborated the testimony of Cadet Cook. Plaintiff's cadet defense counsel was given the opportunity to confront and cross-examine these witnesses. Defense counsel did, in fact, cross-examine all three witnesses.

18. Upon completion of the prosecution's case, Plaintiff's defense counsel was given the opportunity to present witnesses on Plaintiff's behalf. Defense counsel called several witnesses who testified as defense witnesses.

19. Plaintiff testified that he was satisfied with his defense counsel's handling of his case with the exception of the decision not to call him as a witness at the Honor Court trial. The evidence before this court establishes that Plaintiff was given the opportunity to testify but chose not to upon the advice of his defense counsel. Plaintiff testified that he discussed this issue with defense counsel and accepted their advice not to testify.

20. Plaintiff admitted that if the Honor Court found that he had given false information to Cadet Cook to avoid

---

[1] Cadet Glass was another cadet on duty at the front gate on the evening of December 10.

7

being punished for being late, that would constitute an Honor violation.

21. At the close of all the evidence, the Honor Court deliberated and reached a guilty verdict. On the evening of February 7, 1997, Plaintiff was notified of the finding of a guilty verdict.

22. Plaintiff appealed his Honor Court conviction. In filing his appeal, Plaintiff retained the services of a private attorney. Plaintiff's attorney submitted an appeal to The Citadel Honor Board of Review ("Honor Board"). The Honor Board reviewed the case and the issues raised on appeal and upheld the Honor Court conviction.

## II. CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties and the subject matter of this case pursuant to title 42 U.S.C. §§ 1981 and 1983.

2. Plaintiff alleges in his Complaint that Defendants expelled him in violation of his constitutional right to due process and equal protection. Plaintiff also asserts a claim against Defendants for intentional infliction of emotional distress (i.e., "outrage") arising out of his expulsion from The Citadel.



8

3. On Defendant's motion for a directed verdict, the court dismissed Plaintiff's equal protection outrage claims as being unsupported by any evidence in the record. Therefore, the only claim left for decision is Plaintiff's claim that he has been deprived of his right to due process.

4. The Supreme Court has never more than assumed that a college student has a constitutionally protected property interest in his continued enrollment in an academic program. See Regents of Univ. of Mich. v. Ewing, 474 U.S. 507 (1985); Goss v. Lopez, 419 U.S. 565; Henson v. Honor Comm. of Univ. of Va., 719 F.2d 69 (4th Cir. 1983); Lewin v. Medical College of Hampton Roads, 910 F. Supp. 1161 (E.D. Va. 1996). This court assumes that such a right does exist. Thus, this court must determine, assuming that Plaintiff is entitled to due process, what process is due. Due process, which may be said to mean fair procedure, is not a fixed or rigid concept, but rather is a flexible standard which varies, depending upon the nature of the interest affected and the circumstances of the deprivation. See Matthews v. Elridge, 424 U.S. 319, 334 (1976); Wimmer v Lehman, 705 F.2d, 1402, 1404 (4th Cir. 1983), cert. denied, 464 U.S. 992 (1983); Henson v. Honor Comm. of Univ. of Va., 719 F.2d 69, 73 (4th Cir. 1983). In general,

9

due process in the context of student disciplinary proceedings requires notice and an opportunity to be heard before the expulsion or significant suspension of a student. Henson, 719 F.2d at 73.

5.     In Goss v. Lopez, supra, the Supreme Court considered the procedural due process issue in the context of disciplinary action taken by a public school. In that case, students were summarily given ten-day suspensions for misbehaving. The Supreme Court held that the ten day suspension was not a *de minimis* deprivation of property or property interest, and therefore due process required at a minimum, that students be given "some kind of notice and afforded some kind of hearing." Id. at 579 (Emphasis in original).

6.     Although the protection of such a vital interest as obtaining a full education would ideally warrant all possible safeguards, "it must be balanced against the need to promote and protect the primary function of institutions to provide education. Although fairness in disciplinary procedures serves the goal of both students and schools alike, the burdens imposed on schools may become unjustifiable . . . [It] is no exaggeration to state that undue judicialization of an

10

administrative hearing particularly in an academic environment, may result in an improper allocation of resources, and prove counterproductive." Gorman v. University of R. I., 837 F.2d 1, 14-15 (1st Cir. 1988). "The federal judicial power, in cases of this kind, does not run to the imposition of some abstract level of procedural regularity upon academic disciplinary processes but only to ensuring 'rudimentary precautions against unfair or mistaken finding of misconduct and arbitrary exclusion from school.'" Jones v. Board of Governors of Univ. of N.C., 704 F.2d 713, 715 (4th Cir. 1983)(quoting Goss v. Lopez, 419 U.S. 565, 581 (1975)).

7.  In student disciplinary proceedings, the notice and opportunity to be heard should provide the following safeguards in order to satisfy the requirements of due process: (1) the student must be notified before the hearing of the charges against him; (2) he is entitled to the names of the witnesses against him and either a summary of their testimony or the opportunity to confront and cross examine these witnesses; (3) he has the right to be heard in his own defense and to be present and present evidence on his own behalf; and (4) serious disciplinary action should be based upon ample evidence such that the decision is not arbitrary or

capricious. See <u>Henson v. Honor Comm. of Univ. of Va.</u>, 719 F.2d 69 (4th Cir. 1983) (citing <u>Dixon v. Alabama State Bd. of Educ.</u>, 254 F.2d 150, 159 (5th Cir. 1961)); <u>Bistrick v. University of S.C.</u>, 324 F. Supp. 942 (D.S.C. 1971); <u>Herman v. University of S.C.</u>, 341 F. Supp. 226 (D.S.C. 1971).

8. The Citadel honor system provides the accused cadet far more than "rudimentary precautions" against unfair or mistaken findings. The Honor System provides the accused cadet with an impressive array of procedural protection. The cadet, for example, is informed promptly of the specific Honor violation for which he stands accused. <u>The Citadel Honor Manual</u>, Section V, Paragraph 17(j). He has the right to an impartial pre-trial investigation to determine if there is sufficient evidence to carry the case to trial. <u>The Citadel Honor Manual</u>, Section V, Paragraph 17(a). The accused cadet has the right to a fair and prompt trial and the right to know the name of his accuser and the names of witnesses for the prosecution. <u>The Citadel Honor Manual</u>, Section V, Paragraphs (b) and (k). He is entitled to cadet counsel of his own choosing and the right to a reasonable time in which to prepare his defense. <u>The Citadel Honor Manual</u>, Section V, Paragraphs 17(e) and (g). The cadet has the right to have a

12

classmate sit as a member of the Honor Court and to challenge any member of the Honor Court for cause. <u>The Citadel Honor Manual</u>, Section V, Paragraphs 17(d) and (h). At the trial of the case, the cadet has the right to call witnesses on his own behalf and to cross-examine all witnesses called against him. <u>The Citadel Honor Manual</u>, Section V, Paragraphs 17(c) and (f). If, after hearing the evidence, the Honor Court finds the cadet guilty, he has the right to appeal the decision to an Honor Board of Review comprised of members of the President's staff. <u>The Citadel Honor Manual</u>, Section VI, Paragraph 35. This board is empowered to review the records of the Honor trial and make a recommendation to the President affirming or reversing the decision of the Honor Court. <u>Id</u>. The President is then authorized to review the recommendation and render a final decision either affirming or reversing the Honor Court's decision. <u>Id</u>. These procedures afford the accused cadet far more than mere notice and an opportunity to be heard.

9. In the instant case, the procedural steps The Citadel employed in Plaintiff's disciplinary case were constitutionally sufficient to safeguard against an erroneous or arbitrary decision. Plaintiff had adequate notice of the charges against him and the opportunity to be heard by

13

disinterested parties. Plaintiff was provided with the name of his accuser as well as the names of these witnesses who testified against him.

10. While Plaintiff argues that the charge against him should have been dismissed because the case was not held within fifteen (15) days after the accusation, the evidence establishes that the scheduling of trial was consistent with the requirements of The Citadel Honor Manual and did not violate due process. The Citadel Honor Manual states that if the case is not resolved fifteen (15) days after accusation, a written report by the Chairman of the Honor Committee will be submitted to the President stating the circumstances of the delay. The Citadel Honor Manual, Section V, Paragraph 17(b). There is no requirement that the case be dismissed if not resolved within fifteen (15) days of the accusation. The Honor Court chairman, Caldwell Worley, testified that during this fifteen (15) day period, Plaintiff's defense counsel requested a delay of the trial until after the Christmas break. Plaintiff discussed the issue of delay with his defense counsel and agreed with their decision to request a delay if there were an attempt to hold the trial in December. Cadet Worley testified that he notified the President in

14

writing within the fifteen (15) day period that the trial would be postponed until after Christmas at the request of Plaintiff's defense counsel. This court concludes Plaintiff's due process rights were not violated with respect to the scheduling of trial and that Plaintiff was provided a fair and prompt trial in accordance with the provision of the <u>Citadel Honor Manual</u>.

11. Plaintiff was given a reasonable opportunity to prepare his defense prior to trial, including two more continuances at the request of his cadet defense counsel. Plaintiff was provided with three cadet-lawyers who represented him at all critical stages of the proceedings.

12. A full blown Honor Court trial was held, at which witnesses were placed under oath, examined and cross-examined. Plaintiff was given the opportunity at the trial to testify on his own behalf if he chose to do so.

13. Plaintiff also contends that he was unconstitutionally denied the right to a trial by his "peers" because no African American cadets were appointed to the Honor Court. There is no constitutional right to a hearing by a tribunal of any particular racial composition. Indeed, a tribunal selected according to race would be constitutionally

15

suspect. See <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986). Mr. Worley testified that members of the Honor Court were selected from among members of the Honor Committee. There was an African American on the Honor Committee, but Plaintiff disqualified him from service on the Honor Court by selecting him as one of his defense counsel.

14. Cadets Cook and Glass and Officer Cahoon all testified against Plaintiff at the Honor Court trial. Plaintiff conceded that if the Honor Court believed the testimony of the witnesses against him, then he should have been found guilty of an honor violation. Based on the evidence before it, this court concludes that there was sufficient credible evidence to convict Plaintiff of the Honor offense of Lying, and the Honor Court decision was not arbitrary or capricious. See <u>Gorman v. University of R.I.</u>, 837 F.2d 1 (1st Cir. 1988).

15. Following his conviction, Plaintiff was given the opportunity to have his case reviewed by a school appellate body. The Citadel Honor Board of Review reviewed Plaintiff's appeal and affirmed the Honor Court's verdict.

16. This court finds that "[the] due process clause would impose no greater obligations on [The Citadel] than it

placed on itself in conducting its disciplinary proceedings." Henson v. Honor Comm. of Univ. Of Va., 719 F.2d 69, 74 (1983)(citing Dixon v. Alabama State Bd. of Educ., 254 F.2d 150 (5th Cir. 1951)). The court concludes that these constitutionally valid procedures were followed by Defendants in Plaintiff's case, thus providing him with adequate notice and a meaningful opportunity to be heard.

### III. CONCLUSION

For the reasons stated above, the court concludes that Plaintiff was not denied due process of law. Accordingly, judgment is entered for Defendants. Each side shall bear its own costs.

IT IS THEREFORE,

ORDERED that judgment be entered for Defendants.

AND IT IS SO ORDERED.

THE HONORABLE DAVID C. NORTON
UNITED STATES DISTRICT COURT JUDGE

Charleston, South Carolina
September ___, 1997

17